IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY CARDWELL, | |
| Plaintiff, | |
| v. | Case No. 2:12-cv-00522-MEF (WO—Publish) |
| AUBURN UNIVERSITY MONTGOMERY, | |
| Defendants. | |

**MEMORANDUM OPINION & ORDER**

**I. INTRODUCTION**

This case involves claims of age, disability, race, and gender discrimination, as well as claims of fraud, hostile work environment, and retaliation. Before the Court is Defendant Auburn University Montgomery's Motion to Dismiss (Doc. #6), filed on July 19, 2012. In its motion, Defendant Auburn University Montgomery ("Defendant" or "AUM") contends that Plaintiff Mary Cardwell's ("Plaintiff") claims for violations of the Americans with Disabilities Act ("ADA"),[1] the Age Discrimination in Employment Act ("ADEA"),[2] and 42

---

[1] When referring to the ADA, the Court refers to both the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act of 2008.

[2] While the Complaint does not specifically refer to the ADEA, the Court will construe Plaintiff's age discrimination claim as an ADEA claim, consistent with her assertion of other discrimination claims under federal employment discrimination statutes. The Court notes that Alabama also has an age discrimination statute, the Alabama Age Discrimination in Employment Act ("AADEA"), which follows the same analytical framework as the ADEA; however, the Court will not so broadly construe Plaintiff's

1

U.S.C. § 1981,[3] as well as her state-law fraud claim, are barred by Eleventh Amendment sovereign immunity, and accordingly, this Court must dismiss those claims for lack of subject-matter jurisdiction. Further, Defendant contends that Plaintiff has also failed to allege sufficient facts to state any other claims against AUM that are plausible on their face. Plaintiff responds that she has supported each of her claims with adequate factual allegations, but if the Court finds that she has not, Plaintiff requests an opportunity to file an Amended Complaint with more detailed factual allegations.

The Court has carefully considered the arguments and authorities offered in support of and in opposition to this motion and finds that it is due to be GRANTED in part and DENIED in part, as set forth below.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a) (civil rights), and 1367 (supplemental jurisdiction). Additionally, Defendant has not argued that the Court does not have personal jurisdiction over it, and the Court finds adequate allegations to support this jurisdiction. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this district and division.

---

Complaint to contain an AADEA claim as well. *See, e.g.*, *Ehrhardt v. Haddad Rest. Grp.*, 443 Fed. App'x 452, 454 (11th Cir. 2011) (citing *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007)).

[3] Claims for violations of § 1981 are asserted under 42 U.S.C. § 1983, which is also known as the Enforcement Act of 1871.

2

## III. BACKGROUND

Plaintiff's Complaint alleges that she is a female employee over the age of forty (40) who suffers from major depressive disorder, panic disorder, and attention deficit hyperactive disorder. Plaintiff does not specify her race in the Complaint. For nineteen years Plaintiff was employed by AUM, with her last position being Director of Central Advising.

After taking approximately six weeks of leave under the Family and Medical Leave Act ("FMLA") for "significant depression, anxiety, and [a] new onset of panic disorder[,]" Plaintiff returned to work on July 28, 2009. (Doc. #1, at 2.) Approximately three weeks later, on August 17, 2009, Plaintiff received an office visit by Kathy Mitchell ("Mitchell"), Interim Dean of Students, and Kevin Deravi ("Deravi"), Interim Vice-Chancellor for Academic Affairs. During that visit, Mitchell and Deravi told Plaintiff that it was her last day of work and that her layoff status would begin October 1, 2009.

AUM has a published, seniority-based layoff policy. According to the policy, layoffs were to be initiated considering "University seniority," defined by "date of last continuous full-time employment" at AUM. Where affected employees had equal University seniority, "unit seniority" was to be the guiding factor. AUM was not to place an employee on layoff status who was currently on "Sick Leave" or "Leave Without Pay" until such leave period had expired. Announcements of layoffs were to be provided as much in advance as possible, with two weeks being the minimum notification period. Under the policy, qualified employees in layoff status would have first priority for consideration for openings for

comparable jobs to those they once held. Finally, employees could be in layoff status for a period of up to 180 days from the date of layoff.

It is alleged that no one in Plaintiff's department had equal or more continuous service years than her. Following Plaintiff's layoff, the University publically reported that there had been no layoffs despite Plaintiff being placed on layoff status. Plaintiff alleges that younger employees, those without disabilities, those with less experience, and those of a different race and gender assumed her job responsibilities after her termination. Plaintiff also alleges that during her tenure, she received less pay than males in comparable roles. Plaintiff alleges that AUM's decision to characterize her termination as a layoff was a pretext for the true bases for her firing—her disabilities, age, gender, and race, as well as retaliation for her requests and use of FMLA leave.

Plaintiff alleges that AUM's decision to terminate her employment negatively impacted her mental and emotional health, leading to medical treatment, family problems, financial difficulties, worry, anxiety, and embarrassment.

## IV. DISCUSSION

Defendant argues for dismissal of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Defendant argues that Plaintiff's claims for violations of the ADA, ADEA, and 42 U.S.C. § 1981, as well as her state-law fraud claim, should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction because AUM has sovereign immunity under the Eleventh Amendment. Second, Defendant argues

that the remainder of Plaintiff's claims are due to be dismissed under Rule 12(b)(6) due to their failure to adequately state claims upon which relief may be granted. Each will be taken up in turn.

### A.     Rule 12(b)(1) Grounds for Dismissal

#### *1.     Rule 12(b)(1) Standard*

Federal courts have limited jurisdiction. To establish a claim in federal court, the plaintiff must display complete diversity of citizenship or raise a question of federal law for subject matter jurisdiction to exist. The Eleventh Circuit recognizes two challenges to a district court's exercise of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure: facial and factual attacks. *See Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999). "A facial attack questions the sufficiency of the pleading and the plaintiff enjoys similar safeguards to those provided when opposing a motion to dismiss" under Rule 12(b)(6). *Id.* "The court accepts the plaintiff's allegations as true, construes them most favorably to the plaintiff, and will not look beyond the face of the complaint to determine jurisdiction." *Id.*

"A factual attack, on the other hand, permits 'the trial court [to] proceed as it never could under [Rule] 12(b)(6).'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)). A district court may consider "matters outside the pleadings, such as testimony and affidavits[.]" *Lawrence*, 919 F.2d at 1529. Indeed, to determine whether it has the power to hear a case, the district court "may weigh the evidence to confirm its jurisdiction." *Whitson*, 41 F. Supp. 2d at 1296. "'No presumptive truthfulness attaches to

plaintiff's allegations, and the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Dunbar*, 919 F.2d at 1529).

"However, there is an important, if not always clear, distinction between the court's power to determine whether it has subject-matter jurisdiction and its ability to reach the substantive federal-law claims which form the basis of the case." *Id.* "When a jurisdictional challenge implicates the merits of a plaintiff's underlying claim, the proper course of action is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's cause of action." *Giannola v. WW Zephyrhills, LLC*, No. 8:10-cv-2541-T-17TBM, 2011 WL 2784617, at *3 (M.D. Fla. July 14, 2011) (citing *Morrison v. Amway Corp.*, 323 F.3d 920 (11th Cir. 2003)). This procedural course provides a plaintiff with "protection from the court's power to weigh the facts under a Rule 12(b)(1) motion" and to consider matters outside the four corners of the complaint. *Whitson*, 41 F. Supp. 2d at 1296.

The Court construes Defendant's Motion to Dismiss as a facial attack on the sufficiency of subject-matter jurisdiction as plead in Plaintiff's Complaint and will proceed accordingly. *See Adamore v. Sw. Airlines Corp.*, No. H-11-0564, slip op. at 2, 2011 WL 6301398 (S.D. Tex. Dec. 15, 2011) (Werlein, J.) ("A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings.").

### *2.    Eleventh Amendment Sovereign Immunity*

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has been further established through case law that "[a]lthough the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an *unconsenting* state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)) (emphasis added).  Furthermore, it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when . . . an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977)); *Florida Dept. of Health & Rehabilitative Servs. v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (holding that an agency of state government is part of the state for Eleventh Amendment purposes).

AUM is an arm of the State of Alabama and enjoys sovereign immunity under the Eleventh Amendment.  *See, e.g.*, *Vandenberg v. Aramark Educ. Servs.*, 81 So. 3d 326, 332 (Ala. 2011) ("We have specifically extended the restriction on suits against the State found in [Ala. Const. art I,] § 14 to the [S]tate's institutions of higher learning and ha[ve] held those institutions absolutely immune from suits as agencies of the State.") (internal citations

and quotation marks omitted); *Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084, 1089 (N.D. Ala. 2003) (holding that an Alabama state university is immune from suit as an arm of the State); *McCray v. Auburn Univ. Montgomery*, No. 2:11-cv-714-WHA, slip op. at 2, 2012 WL 787040 (M.D. Ala. Mar. 12, 2012) (holding that Auburn University Montgomery enjoys sovereign immunity under the Eleventh Amendment). Absent a valid waiver or abrogation, AUM may not be sued in federal court for either money damages or injunctive relief. *See, e.g., Cobb v. Ala.*, 2:10-cv-502-MHT, 2011 WL 3666696, at *2 (M.D. Ala. Aug. 22, 2011) (Thompson, J.).

Defendant argues that Plaintiff's claims for violations of the ADA, the ADEA, and § 1981, as well as Plaintiff's state-law fraud claim, are due to be dismissed on sovereign immunity grounds. The Court will analyze each of these claims below.

### i.  **Plaintiff's Disability and Age Discrimination Claims**

As to Plaintiff's disability and age discrimination claims contained in Counts II and IV of her Complaint,[4] the U.S. Supreme Court has spoken directly to the issue of whether Congress validly abrogated the States' sovereign immunity when it enacted the ADA and the ADEA, and it held that neither statute abrogates state sovereign immunity with respect to employment discrimination. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356

---

[4] Plaintiff titles Count II of her Complaint, "Discrimination in Violation of Title VII of the Civil Rights Act of 1964," but she also includes allegations of age and disability discrimination, which would be asserted under the ADEA and the ADA. (Doc. #1, at 7.) Thus, for purposes of this Order, the Court construes Count II to assert claims under the ADA and the ADEA in addition to a claim under Title VII. Plaintiff titles Count IV of her Complaint, "Violation of the American's (sic) with Disabilities Act." (Doc. #1, at 9.)

(2001) (ADA); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) (ADEA). Lacking a valid abrogation of AUM's sovereign immunity, Plaintiff's claims for disability and age discrimination are due to be dismissed.

### ii. Plaintiff's Fraud Claim

As to Plaintiff's state-law fraud claim, the Alabama Constitution clearly bars such lawsuits against the state, which, as discussed above, includes AUM. Ala. Const. art. I, § 14 (declaring "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity"). Furthermore, Eleventh Amendment immunity applies "regardless of whether the claim is based on state law or federal law," and specifically applies to a state-law claim brought under the Court's supplemental jurisdiction. *Flood v. Ala. Dept. of Indus. Rels.*, 948 F. Supp. 1535, 1542 (M.D. Ala. 1996) (citing *Pennhurst v. State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984)). Although Cardwell contends that AUM is not entitled to immunity because it engaged in fraudulent conduct, she confuses the limits of state-agent immunity afforded to state officers acting in their official capacities with the absolute immunity enjoyed by the State of Alabama and its agencies. Plaintiff sued AUM, not any state officials who might be subject to suit for declaratory or injunctive relief. Therefore, Plaintiff's fraud claim is due to be dismissed as barred by AUM's absolute immunity.

### iii.     Plaintiff's Claim for Violation of 42 U.S.C. § 1981

Defendant argues that Plaintiff's § 1981 race discrimination claim is also due to be dismissed because it is asserted against AUM, an arm of the State of Alabama that is not a "person" subject to suit through § 1983 for violations of § 1981.  Plaintiff does not respond to this argument, effectively conceding it.  In any event, the Court agrees with Defendant that a § 1981 claim cannot be brought against AUM because AUM is not a "person" subject to suit under § 1983.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (holding that "a state is not a 'person' against whom a § 1983 claim for money damages might be asserted"); *Carr v. Bd. of Regents of the Univ. Sys.*, 249 Fed. App'x 146, 148 (11th Cir. 2007) (finding that a state entity is not a "person" subject to suit under § 1983); *see also Bryan v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (finding that any claim against a state actor for a § 1981 violation must be asserted under § 1983).

Not only is AUM not a "person" subject to suit for violations of § 1981 asserted against a state actor under § 1983, the U.S. Supreme Court has held that Eleventh Amendment immunity bars § 1983 suits against state governmental entities in federal court due to Congress's lack of clear intent to abrogate Eleventh Amendment immunity for claims brought pursuant to § 1983.  *See Quern v. Jordan*, 440 U.S. 332 (1979).  For these reasons, Plaintiff's § 1981 claim brought pursuant to § 1983 is due to be dismissed.

**B.     Rule 12(b)(6)—Failure to State a Claim**[5]

In its Motion to Dismiss, Defendant argues that Plaintiff's remaining claims fail to meet minimum pleading standards required by Rule 12(b)(6) and related case law, contending that Cardwell's claims for hostile work environment (Count I), Title VII discrimination (Count II), and retaliation (Count III) "consist of conclusory allegations with no or almost no factual support." (Doc. #6, at 7.) Plaintiff responds that she has adequately "detail[ed] the facts leading up to the causes of action," but, in the alternative, she moves the Court to allow her an opportunity to submit an Amended Complaint with greater factual specificity. (Doc. #12, at 7.) Additionally, each party supports its position with specific arguments related to Plaintiff's individual causes of action. The Court will begin by reviewing the pleading standard.

   *1.     The Rule 12(b)(6) Standard*

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). It does not delve into disputes over the proof of the facts alleged—such a crucible is reserved for the summary judgment stage. With this in mind, the Court accepts as true all well-pleaded factual allegations in the complaint, viewing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284

---

[5] AUM does not enjoy sovereign immunity from race and sex discrimination claims, as the United States Supreme Court has found that anti-discrimination statutes prohibiting race and sex discrimination validly apply to the states pursuant to Congress's powers under § 5 of the Fourteenth Amendment, which was specifically intended to limit state sovereignty. *See, e.g.*, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (finding that Title VII constitutes a valid abrogation of Eleventh Amendment immunity); *Varner v. Illinois State University*, 226 F.3d 927 (7th Cir. 2000), cert. denied, 533 U.S. 902 (2001) (finding that the Equal Pay Act constitutes a valid abrogation of Eleventh Amendment Immunity).

(11th Cir. 2008); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  The Court will grant a motion to dismiss "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Ed. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

A motion to dismiss also requires compliance with some minimal pleading standards. Indeed, although a plaintiff's complaint generally need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the plaintiff must still allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559.  Nor does it suffice if the pleadings merely leave "open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 561.

### 2. *Title VII Hostile Work Environment*

In its Motion to Dismiss, Defendant contends that Plaintiff's hostile work environment claim fails to allege "any facts severe or pervasive enough" to state a viable plausible claim for hostile work environment, and Defendant further points out that Plaintiff

does not even allege the protected characteristic upon which this claim is based. (Doc. #6, at 10–11.) In response, Plaintiff does not point the Court to any specific factual allegations in the Complaint to support the "protected characteristic" or "severe or pervasive" elements of a hostile work environment claim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54 (1998). As such, the Court finds that Plaintiff's hostile work environment claim, as currently pleaded, fails to state a claim that is plausible on its face. However, the Court will refrain from dismissing this claim to give Plaintiff the opportunity she requests to file an Amended Complaint to properly allege a hostile work environment claim.

### *3.     Title VII Race and Gender Discrimination*

Defendant argues that Plaintiff's Title VII race and gender discrimination claims only contain conclusory allegations, which are not entitled to the presumption of truthfulness, and that, furthermore, Plaintiff's Complaint otherwise lacks concrete allegations that go beyond speculation to make out a plausible claim for entitlement to relief. (Doc. #6, at 8–13.) In response, Plaintiff contends that Defendant's Motion to Dismiss "ignores multiple pages of facts preceding and forming the basis of the causes of action" and that said pages of facts adequately make out plausible claims. (Doc. #12, at 7.)

The Court finds Defendant's argument persuasive. While Plaintiff does include over two pages of factual allegations, her allegations of disparate treatment on account of race and gender are speculative, at best, and conclusory, at worst. (Doc. #1, at 2–4.) For example, in three different paragraphs alleging that her termination constituted disparate treatment on

13

account of her race and gender, Plaintiff simply states the conclusion that she was discriminated against for those reasons listed along with her disabilities and age. Further undermining the plausibility of her race discrimination claim, Plaintiff does not specify her race, the race of any other similarly situated individuals that received comparably better treatment than her, or any other concrete and specific information concerning the basis of her race discrimination claims. The most that can be said of Plaintiff's allegations is that they allege a mere possibility of discrimination, which alone is not enough to satisfy the heightened pleading standards of Rule 12(b)(6). *See Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). Such "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *See id.* at 679 (citing *Iqbal*, 556 U.S. at 679).

Still, as with Plaintiff's hostile work environment claim, the Court will allow Plaintiff the opportunity to file an Amended Complaint to properly allege a race and gender discrimination claim.

### 4.     *Title VII Retaliation*

In its Motion to Dismiss, Defendant also argues that, aside from the conclusory allegations in the claim itself, the only factual allegation remotely supporting retaliation is that Plaintiff was terminated "in retaliation for her requests for leave under the FMLA." (Doc. #6, at 14.) Plaintiff points to no other factual allegations in her Complaint that support her retaliation claim. (Doc. #12, at 7.)

The Court finds that Plaintiff's claim for retaliation in violation of Title VII is not supported by any factual allegations that are entitled to the presumption of truthfulness, and therefore, this claim fails to meet minimum pleading standards. However, as with Plaintiff's hostile work environment and race and gender discrimination claims, the Court will allow Plaintiff the opportunity to amend her Complaint to cure these pleading deficiencies.

### 5. *Violation of the Equal Pay Act*

Defendant fails in its Motion to Dismiss to specifically challenge the adequacy of Plaintiff's pleading of its Equal Pay Act claim, and accordingly, Plaintiff does not defend this claim in its response. While Plaintiff may do well to include more detailed factual allegations regarding each of the elements of an Equal Pay Act claim to survive any future motion to dismiss, the Court finds that Plaintiff's Equal Pay Act claim is not due to be dismissed at this time.

### C.   Rule 15(a)(2)—Amending Plaintiff's Complaint

In her response to Defendant's Motion to Dismiss, Plaintiff moves for leave to amend her Complaint in the case that any of her claims are found to be inadequately pleaded. (Doc. #12, at 7.) In its reply, Defendant does not expressly oppose Plaintiff's motion for leave to amend her Complaint. (Doc. #13.)

The Federal Rules of Civil Procedure provide that, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In this case, the Court finds that justice requires that leave be given to Plaintiff to file an Amended Complaint to include more detailed factual allegations in support of her claims that have not yet been dismissed that are contained in Counts I, II, III, and VI of the Complaint.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Defendant Auburn University Montgomery's Motion to Dismiss (Doc. #6) is GRANTED in part and DENIED in part. The motion is DENIED with respect to Counts I, II, III, and VI, except that the discrimination claims asserted in Count II for violations of the ADA, ADEA, and 42 U.S.C. § 1981 contained therein are DISMISSED with prejudice. The motion is GRANTED with respect to Counts IV and V, which are DISMISSED with prejudice.

2. Plaintiff is given leave to file an Amended Complaint within 30 days from the date of this Order to cure the pleading inadequacies identified in this Memorandum Opinion & Order. If Plaintiff fails to submit an Amended Complaint within that allotted time, all remaining claims except Plaintiff's Equal Pay Act claim will be dismissed with prejudice.

Done this the 22nd day of April, 2013.

                                                                /s/ Mark E. Fuller
                                          UNITED STATES DISTRICT JUDGE